IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVE OMANS,

                    Plaintiff,              Case No. 11 C 8178

          v.                               Hon. Harry D. Leinenweber

MANPOWER, INC.,

                    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Partial Motion to Dismiss. For the reasons stated herein, the Motion is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Steve Omans ("Omans") is suing his former employer, Manpower, Inc. ("Manpower"). Manpower employed Omans from on or about December 28, 2008 until July 15, 2009. Omans was hired to facilitate sales of Manpower's staffing services to the healthcare industry. The parties appear to agree that Plaintiff was employed under an agreement that included Manpower's "Manpower 2009 Field Incentive Plan Document" (hereinafter, the "Incentive Plan"), which makes a sales representative's commission a function of Manpower's gross profit from a given sale. The incentive payments were to be made on a monthly basis "on targeted account revenues for 12 months from the assignment date per account sold during the first 12

months of a new account." The Incentive Plan, which was attached to the Complaint, essentially states that an employee must be actively employed by Manpower on the closing date of the particular incentive period to be eligible for incentive payout for that period.

Omans allegedly won for Manpower a $6 million service contract with Allscripts, LLC ("Allscripts") around July 6, 2009, as well as several smaller contracts. All told, had he continued to work for Manpower for the 12 months after the Allscripts contract was signed, he allegedly would have received commissions in excess of $200,000 on those accounts. Instead, he alleges, he was fired in July 2009 so that Manpower would not have to pay him the commissions he had earned.

Plaintiff filed this suit in the Circuit Court of Cook County, and it was removed to this Court. The Complaint includes six counts, including breach of the covenant of good faith and fair dealing (Count II), violations of the Illinois Wage Payment and Collection Act ("IWPCA," 820 ILL. COMP. STAT. 115/1 *et seq.*) (Count IV), and promissory fraud (Count V). Defendant moved to dismiss all but Count II. Plaintiff has now withdrawn Count I, Count III, and the misnumbered Count VII (which withdrawal, contrary to Defendant's claim, is not a concession of any contested facts). Accordingly, the only counts remaining in the suit are Count II, Count IV, and Count V.

## II.  <u>LEGAL STANDARD</u>

On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in Plaintiff's Complaint and draws all inferences in his favor.  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is to say, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

Where a plaintiff alleges fraud, however, Fed. R. Civ. P. 9 requires him to state the basis for his allegations "with particularity."  Therefore, although states of mind may be pled generally, the "who, what, when, where, and how" of the fraud must be pled in detail.  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## III.  <u>DISCUSSION</u>

### A.  Removal Petition

Before proceeding, the Court must assure itself that it has proper subject matter jurisdiction in this case.  The Notice of

Removal states: "Plaintiff alleges in his complaint that he resides in Chicago, Illinois and therefore is a citizen of the state of Illinois. Plaintiff is an individual residing in Chicago, Illinois." The Complaint states merely that Plaintiff "is an individual residing in" Chicago. However, the Seventh Circuit is clear that merely alleging that someone is an Illinois resident, and by virtue of that fact alone an Illinois citizen, is insufficient to confer jurisdiction. *Heinen v. Northrop Grumman Corp.,* 671 F.3d 669, 670 (7th Cir. 2012) (rejecting as deficient an allegation that a party was a resident of Massachusetts and therefore citizen of that state). However, facts supporting Plaintiff's Illinois citizenship are stated, albeit imperfectly, in the Notice of Removal and accompanying Complaint. Accordingly, the Court gives Defendant fifteen (15) days from the date of entry of this order to amend its Notice of Removal to clarify the jurisdictional allegations. *See* 28 U.S.C. § 1653.

## B. Count IV

As noted above, the parties have winnowed the counts at issue in this Motion down to two: Count IV and Count V. Plaintiff brings Count IV under the IWPCA, alleging that Manpower has wrongfully withheld the commissions that Omans earned during his tenure at the company.

Among other things, the IWPCA sets deadlines for companies to pay final compensation to terminated employees. 820 ILL. COMP. STAT.

- 4 -

115/5. "Final compensation" includes salary and earned commissions owed to the employee by the employer "pursuant to an employment contract or agreement between the 2 parties." 820 ILL. COMP. STAT. 115/2. Illinois cases are clear that an "agreement" requires only the manifestation of mutual assent, not a contract. *See Skelton v. Am. Intercontinental Univ. Online,* 382 F.Supp.2d 1068, 1075 (N.D. Ill. 2005) (citing, *inter alia*, *Catania v. Local 4250/5050, Commc'ns Workers of Am.*, 834 N.E.2d 966, 971-72 (Ill. App. Ct. 2005)).

Plaintiff does not argue that the Incentive Plan violates the IWPCA, *see Camillo v. Wal-Mart Stores, Inc.,* 582 N.E.2d 729, 734 (Ill. App. Ct. 1991). Instead, the crux of the dispute is whether, if Plaintiff can prove that he was unlawfully terminated, he will be entitled to recover under the IWPCA. This is so because, unlike in many similar cases, the Incentive Plan expressly deals with when and if terminated employees receive commissions. Defendant argues that the IWPCA claim fails because (as Plaintiff concedes in Count II) the Incentive Plan makes commission payments available only to current employees. Accordingly, Manpower argues, because the IWPCA merely enforces contractual agreements, and the Incentive Plan anticipated that commission payments would stop upon termination, Plaintiff's claim fails.

Plaintiff argues that Defendant's claim that not paying post-termination commissions was consistent with the incentive plan is

irrelevant at this stage. However, Plaintiff attached the Incentive Plan to his Complaint; if the contract terms defeat Plaintiff's claims, this Court would not be bound to ignore it. More broadly, Plaintiff argues that, but for the bad-faith termination alleged in Count II, he would have received commission payments. Therefore, he reasons, once he proves that he was fired in bad faith, the IWPCA gives him an enforcement mechanism for collecting the money. However, he cites no authority for that proposition.

Several courts have recognized that where there is no viable claim to the money sought, an IWPCA claim must also fail, *see, e.g.*, *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 312 (7th Cir. 2011). It does not follow, however, that every successful claim for wrongful termination creates rights enforceable under the IWPCA. The Seventh Circuit has generally focused the IWPCA inquiry on whether, under the employment agreement, there is money owing on the date of termination. *See Houben v. Telular Corp.*, 231 F.3d 1066, 1072-73 (7th Cir. 2000) (analyzing the contract terms and gap-filling law to determine whether and when the plaintiff was entitled to commission payments). Under this approach, the alleged bad-faith termination of Plaintiff's job in order to avoid paying him under the Incentive Plan, while reprehensible, would not be actionable under the IWPCA.

Plaintiff arguably finds support in *Hess v. Kanoski & Assocs.*, 668 F.3d 446 (7th Cir. 2012). There, the court considered whether an attorney was entitled to a bonus based on settlements that were finalized after he left his law firm. The court scrutinized the contract terms, but concluded that they were unclear as to when fees were "generated" for the purpose of calculating bonuses. *Id.* at 453. The Court also noted, however, that the lawyer had a good argument for a receiving a bonus based on settlements reached in the 30 days after his departure, because the firm had breached the contract's 30-day notice requirement, and the legal remedy for that breach was continued compensation for 30 days. *Id.* It appears, then, that the Seventh Circuit has incorporated some contract remedies in assessing IWPCA claims.

Even under that approach, however, Plaintiff's claim fails. In *Hess* the Court incorporated the remedy for the breach of the notice agreement; here, Illinois has explicitly declined to recognize the tort of breach of the covenant of good faith and fair dealing – which is the fairest reading of the allegations in Count II. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (citing *Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126 (Ill. 2001)). Accordingly, not only does Plaintiff's IWPCA claim fail in so far as it is premised upon a violation of that covenant, Plaintiff's Count II must likewise be dismissed. It is dismissed without prejudice, however, as

Plaintiff can readily re-plead the Count as breach of contract claim (which, despite its tort-like appearance, is how Plaintiff describes the claim in his Response).

## C.  Count V

At the outset, the Court notes that Plaintiff titled Count V "Fraudulent Scheme to Induce Contract," but both parties have briefed this claim as though it were strictly a promissory fraud claim, and the Court follows suit.  *Cf. Metro Premuim Wines v. Bogle Vineyards, Inc.,* No. 11 C 911, 2011 WL 2432957, at *7-8 (distinguishing the two).  To establish fraud under Illinois law, a plaintiff must show that a defendant made a false statement of material fact, knowing it to be false and intending the plaintiff to act on it.  *Houben,* 231 F.3d 1066 at 1074.  A plaintiff must also show that it justifiably relied on the statement to its detriment. *Id.  See also, Gen. Elec. Credit Auto Lease, Inc. v. Jankuski*, 532 N.E.2d 361, 363-65 (Ill. App. Ct. 1988).

The general rule in Illinois is that a promise of future conduct, even when it is made without any intention to perform, will not support a claim of fraud.  *Concord Indus., Inc. v. Harvel Indus. Corp.*, 462 N.E.2d 1252, 125 (Ill. App. Ct. 1984).  That is to say, promissory fraud is generally not actionable in Illinois. There is an exception, however, where the promise is part of a scheme or device by which the fraud is carried out.  *Houben*, 231 F.3d at 1074*.  See also, Chatham Surgicore, Ltd. v. Health Care*

*Serv. Corp.*, 826 N.E.2d 970, 977-79 (Ill. App. Ct. 2005). The scheme exception applies where "a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (citing *Concord Indus.*, 462 N.E.2d at 1255).

Courts have expressed some confusion regarding this exception, and some courts have noted that it nearly swallows the general rule. *See Jankuski*, 532 N.E.2d at 364; *Petrakopoulou v. DHR Intern., Inc.*, 660 F.Supp.2d 935, 938-39 (N.D. Ill. 2009). The Seventh Circuit, however, has declined to read "scheme" out of the law, and requires a particularly egregious lie or a pattern of fraudulent statements or actions in order to find a scheme. *Desnick v. Am. Broad. Co., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). That requirement helps ensure that every breach of contract claim is not converted into a claim for promissory fraud – a series of broken promises, while not conclusive, is better evidence of fraud than is a single one. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865-66 (7th Cir.1999). Although one fraudulent promise will ordinarily not suffice unless it is particularly egregious, Illinois courts have found as few as two broken promises to constitute the requisite scheme. *Wigod v. Wells Fargo Bank*, --- F.3d ---, 2012 WL 727646, at *14 (7th Cir. 2012) (citing *Jankuski*, 532 N.E.2d at 362-63). Making one fraudulent promise repeatedly,

including a promise of future payment, can also suffice. *See HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 68 (Ill. 1989); *Elsheikh v. Falcon Holdings, LLC*, No. 10 C 2952, 2010 WL 4790908, at *1 (N.D. Ill. Nov. 18, 2010).

To survive a motion to dismiss, a plaintiff must therefore "point to specific, objective manifestations of fraudulent intent[.]" *Bower v. Jones,* 978 F.2d 1004, 1011-12 (7th Cir. 1992) (citing *Hollymatic Corp. v. Holly Systems, Inc.,* 620 F.Supp. 1366, 1369 (N.D. Ill. 1985).) Defendant argues that Plaintiff has not sufficiently done so, because he has alleged only one broken promise – the promise that Manpower would timely pay Omans his earned commissions. Absent any broader scheme or pattern of deceptions, Defendant argues, this is merely a breach of contract claim.

The Court notes that this Complaint is hardly "replete with factual detail, including among other things, names, times, and contractual documents." *BPI Energy Holdings, Inc. v. IEC (Montgomery)*, 2010 WL 331732, at *6 (S.D. Ill. 2010). However, Defendant did not move to dismiss this count on Rule 9 grounds, and Rule 9 objections are thereby waived. *See WMH Tool Group, Inc. v. Woodstock Intern., Inc.*, No. 07 C 3885, 2009 WL 6825247, at *10 n.4 (N.D. Ill. 2009). In any event, Plaintiff has satisfied, albeit narrowly, the pleading requirements for a promissory fraud claim under Illinois law, at least as to the Allscripts contract.

Although Plaintiff makes several general allegations about promises Manpower made regarding commission payments, *see* Compl. ¶ 56, he also makes more specific allegations to support his claim. For example, he specifically alleges the terms of the Incentive Plan and the date and general circumstances of Manpower's Incentive Plan presentation. Although his allegations of general praise and good performance cannot support a promissory fraud claim, *see Houben,* 231 F.3d at 1074, Omans does allege that on May 22, 2009, Manpower employee Anne Edmonds told him that he would receive his commission on the full $6 million Allscripts contract. (The fact that the details of the Incentive Plan were not presented to Plaintiff until January 2009 does not, as Defendant argues, defeat Plaintiff's claim that he relied on the Plan. Plaintiff specifically alleged that he relied on the Plan and other promises by *continuing* to work for Manpower at will, and not merely by taking the job. *See Elsheikh,* 2010 WL 4790908, at *2 (similar allegations sufficiently stated detrimental reliance).)

Plaintiff also alleges that Manpower never intended to pay him commissions, and offers some facts to support that allegation. He claims that he was told that the Allscripts contract would be signed the week of July 16, 2009, and that he was terminated on July 15, 2009, immediately before his entitlement to the Allscripts commission would have vested under the Incentive Plan. Although his allegations regarding the other accounts are significantly more

general, the Court concludes that the allegations regarding the Allscripts contract, accepted as true and construed favorably to Plaintiff, are specific and objective manifestations of Manpower's fraudulent intent sufficient to survive a motion to dismiss.

Accordingly, the Court will not dismiss Count V for failure to state a claim upon which relief can be based.  However, Plaintiff is warned that "[b]roken promises, without more, are breaches of contract" and not fraud, and that more proof of fraudulent intent is needed to survive summary judgment.  *See Frerck v. John Wiley & Sons, Inc.*, --- F.Supp.2d ---, 2012 WL 386713, at *6-7(N.D. Ill. 2012) (citation omitted).

## IV.  CONCLUSION

For the reasons stated herein, the Court dismisses Count II and Count IV without prejudice, and denies the Motion to Dismiss Count V.  The Defendant has fifteen (15) days from the date of entry of this Order to amend its Notice of Removal to clarify the jurisdictional allegations in this matter.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 5/2/2012

- 12 -