```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

STEVE OMANS,

                    Plaintiff,        Case No. 11 C 8178

       v.                        Hon. Harry D. Leinenweber

MANPOWER, INC.,

                    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Second Motion to Dismiss. For the reasons stated herein, the motion is denied.

## I.  BACKGROUND

The Court set out the case background in its May 2, 2012 opinion and will not repeat it at length. Briefly, Plaintiff Steve Omans ("Omans") sues his former employer, Manpower, Inc. ("Manpower"), for whom he worked from December 2008 until July 15, 2009. Omans was hired to sell Manpower's support services to the healthcare industry.

Plaintiff was employed, evidently at will, under an agreement which included Manpower's "Manpower 2009 Field Incentive Plan Document" ("Incentive Plan" or "Plan"), which makes a sales representative's commission a function of Manpower's gross profit from a given account. Incentive payments were to be made on a monthly basis "on targeted account revenues for 12 months from the

assignment date per account sold during the first 12 months of a new account." The Plan, which was attached to the Complaint, states that an employee must be actively employed by Manpower on the closing date of the particular incentive period ("based on JDE cut-off," though what "JDE" means is unclear) to be eligible for incentive payout for that period.

Omans allegedly won for Manpower several contracts, including a $6 million service contract with Allscripts, LLC ("Allscripts") around July 6, 2009. All told, had he continued to work for Manpower for 12 more months, he allegedly would have earned over $200,000 in commissions. Instead, he claims, he was fired so that Manpower would not have to pay him the commissions he had earned.

This Court granted in part and denied in part Defendant's first Motion to Dismiss. Plaintiff subsequently filed a three-count Amended Complaint. Two of those, Count I (for breach of contract through breach of the implied covenant of good faith and fair dealing) and Count II (under the Illinois Wage Payment and Collection Act, (the "IWPCA") are at issue here.

## II. <u>LEGAL STANDARD</u>

The Court accepts as true all well-pleaded facts in the Complaint and draws all inferences in Plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

### III. DISCUSSION

#### A. Count I – Breach of Contract

An Illinois appellate court recently summarized the law of the implied covenant of good faith and fair dealing ("covenant"), which is implied in every Illinois contract:

> Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.
>
> Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations. However, in general, it is not an independent source of duties for contracting parties.

*Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. Ct. 2007). The covenant generally cannot be used to contradict the express terms of the contract. *See Nat'l Serv. Ass'n v. Capitol Bankers Life Ins. Co.*, 832 F.Supp. 227, 232 (N.D. Ill. 1993). As we shall see, some complexity arises in applying these principles to at-will employment.

Defendant argues that Plaintiff's claim impermissibly contradicts the express terms of the Plan. By his own admission, Defendant argues, Plaintiff was not an employee after July 15, 2009, and was not eligible for additional incentive pay under the Plan. Furthermore, Plaintiff cannot claim a breach of the Plan through breach of the covenant, because he had no "reasonable expectation of perpetual employment or to be paid commissions after his termination." Mot. 5. That is to say, Defendant argues that Manpower retained the right to terminate Plaintiff at any time; his firing and subsequent ineligibility for incentive pay were anticipated for in the Plan, and so were not arbitrary, capricious, or inconsistent with the parties' reasonable expectations.

Plaintiff notes that the covenant is implied in every contract, such that an avowedly opportunistic discharge is a breach of contract, even if the employee is at-will. See Pl.'s Resp. 9-10 (citing, *inter alia*, *Jordan v. Duff & Phelps*, 815 F.2d 429, 438 (7th Cir. 1987)). Plaintiff contends that this case presents precisely the sort of opportunistic manipulation condemned in *Jordan* — Manpower's bad faith exercise of its discretion to fire Omans to avoid paying him substantial commissions. Omans' reasonable expectation was not permanent employment, he argues, but that he would enjoy the benefits of his best efforts. See *Id.* at 11. It is for the jury to decide, he claims, what pay he was reasonably entitled to. *Id.* He emphasizes that he is not seeking

reinstatement, only commissions for the sales that he concluded while working, and which he would have received but for his bad-faith termination.

Plaintiff's termination was not opportunistic, Defendant argues, because "good faith" means not taking advantage of one's contract partner in a way that the parties did not foresee in reaching their agreement. (*Jordan*, it argues, falls into precisely that mold.) Accordingly, because the Plan contemplated employees being terminated and their ineligibility for incentive payments thereafter, this situation was hardly unforeseen.

The parties have hit upon an area of Illinois law that is less than crystal clear in this Circuit. At one time, the Seventh Circuit maintained that the covenant did not extend to at-will employees at all. *See Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 215 (7th Cir. 1986) *overruled on other grounds by Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993).

In *Jordan,* a former employee of a closely-held corporation argued that the company should have told him, when he was planning to resign and sell back his stock shares, that it was in merger discussions that would make his stock much more valuable. In dissent, Judge Richard Posner found no duty to disclose; given that the employee was at-will, he claimed, the company could have fired him with the explicit goal of "calling" his stock shares and

keeping the profits. *Jordan,* 815 F.2d at 446 (Posner, J. dissenting).

Judge Frank Easterbrook, writing for the court, rejected Judge Posner's argument, noting that being employed "at will" does not imply that an employee may be discharged for literally *any* reason. Instead, the court found that every contract contains an implied term that neither party will take opportunistic advantage of the other. *Id.* at 438. It noted that cases where an employer allegedly fires someone immediately before a large commission comes due present difficult questions, but noted that no one "doubts that avowedly opportunistic discharge is a breach of contract, although the employment is at will." *Id.* The covenant, of course, is not an enforceable duty to be nice; "[a]n employer may be thoughtless, nasty, and mistaken." *Id.* Nonetheless, the court noted, even if Jordan could have been fired without judicial inquiry, it does not follow that an opportunistic discharge allows an employer to buy out the stock "on the eve of its appreciation." *Id.* at 439.

Four years after *Jordan*, the Seventh Circuit faced a similar question in *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559 (1991). There, it noted that the covenant only furthers a contract's other terms, and does not create an independent cause of action. *Id.* at 565. It found the idea incongruous that the covenant could restrict an employer's right under at-will employment to terminate an employee for any reason. *Id. citing Harrison v. Sears, Roebuck*

*& Co.*, 546 N.E.2d 248, 256 (Ill. App. Ct. 1989). Still, it cited *Jordan*, accepting that the "law seems fairly clear that an employee at will may not be deprived of commissions (in large part 'earned' prior to separating from the employer) by a discharge made in bad faith and intended to deprive the employee of the commissions," but also noted that Illinois courts are reluctant to "eviscerate the at-will doctrine." *Id.* at 566 (citations and quotations omitted).

Instead of resolving this tension, it turned to the case before it, in which an employer allegedly breached the covenant by pretextually firing an at-will employee after he had procured a substantial "sale," but before his commission payments came due. *Id.* Ultimately, the Seventh Circuit declined to apply the opportunistic discharge theory, because the plaintiff sought a commission based upon an executed Bulk Service Agreement ("BSA"), which was not a "commissionable event." Because LaScola had received all of the commissions for the actual sales pursuant to the BSA to which the compensation plan entitled him, it found, the opportunistic discharge theory did not apply and there was no reason to assess good or bad faith. *Id.* at 566-67.

Subsequent discussions of these cases have not clarified matters very much. In a 1992 license agreement case, the Seventh Circuit distinguished the Illinois employment cases, noting that several courts had found that the covenant "gives way" in the at-will employment context. *Beraha v. Baxter Health Care Corp.*, 956

F.2d 1436, 1444-45 (7th Cir. 1992). It reasoned that the covenant requires a party with discretion to exercise it reasonably, with a proper motive, and consistent with the parties' reasonable expectations; since an at-will employee may be terminated for virtually any reason, the parties' expectations could not be that the employee will only be terminated for cause. *Id.* *Beraha* mentioned neither *Jordan* nor *LaScola*, though it cited several older Illinois and district court cases.

In 1993, the court noted that *Jordan* could be read as finding either that it violates "state common law to fire an [at-will] employee in order to deprive him of an opportunity that he had earned by being a satisfactory employee[;]" or that while a company could fire an at-will employee for any reason, it could not do so just to deprive him of increased profits *and also* deny him his share. *Stromberger v. 3M Co.*, 990 F.2d 974, 977-78 (7th Cir. 1993) It did not resolve the issue, nor did it mention *LaScola.*

In 1996-97, in the context of commercial sales agreements, the Seventh Circuit narrowly defined opportunism in contracting, emphasizing that "good faith" is a gap-filling term to cover unanticipated situations, and that terminated at-will sales relationships need not be justified in court in terms of good faith. *See, e.g., L.A.P.D., Inc. v. General Elec. Corp.,* 132 F.3d 402, 403-04 (7th Cir. 1997). It noted that contracting opportunism typically means taking advantage of one's contract partner either

because they performed first, or simply "in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Indus. Representatives, Inc. v. CP Clare Corp.,* 74 F.3d 128, 129-30 (7th Cir. 1996). In *CP Clare,* it rejected both the plaintiff's definition of opportunistic ("any decision by which, after one party has made investments, the other breaks off the transactions to appropriate more of the gain these investments brought into being"), and the plaintiff's claim, which fell in neither of the categories described above. *Id.* Most relevant here, it described *Jordan* as a case in which the parties had not anticipated the situation that arose, and therefore had not resolved it in their agreement. *Id.* at 130.

Finally, in a 1998 case under Indiana law, the court cited both *Jordan* and *LaScola* in noting that because an oral employment contract "left much to implicit understandings," the defendant might be found to have implicitly promised not to discharge the plaintiff just to deprive him of the bonus he had earned. *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1123 (7th Cir. 1998).

These and similar cases have led some courts to conclude (at least in other contexts) that at-will employment is a complete defense to a breach of contract claim. *See Campbell v. AT&T Communications, Inc.*, No. 91 C 8296, 1994 WL 380620, at *8 (N.D.

Ill. July 18, 1994). Too many to list have stated that there is no independent action for breach of the covenant, and left it at that. A few others, however, have faced the question of whether opportunistic discharge is an exception to that rule. *See, e.g., Musso v. Excellence in Motivation, Inc.*, No. 10 C 3236, 2010 WL 3385452, at *3 (N.D. Ill. Aug. 24, 2010) (finding that being "deprived by an 'avowedly opportunistic discharge' of compensation for work already performed" is a "narrow exception to the general rule of at-will employment," which requires a plaintiff to plead "specific facts" regarding his entitlement to the compensation); *Houston v. Blockbuster Videos, Inc.,* No. 96 C 4546, 1997 WL 102548, at *7 (N.D. Ill. Mar. 5, 1997) (not addressing the issue, as there was no evidence of opportunism). The Court agrees with *Musso*; the claim does not inherently fail as a matter of law.

There are, however, suggestions that the Plan, like that in *LaScola*, required additional events to transpire before Plaintiff became entitled to a commission on, for example, the AllScripts sale. In *LaScola,* the BSA was not a "commissionable" sale, because it was the sales and installations that transpired *under* that BSA that triggered incentive pay. Here, the Plan provided that "incentive will be paid monthly on targeted account revenues for 12 months from the assignment date per account sold during the first 12 months of a new account." Read in conjunction with the requirement that, to be eligible for incentive payments, a

salesperson has to be employed on the closing date of the incentive period, this term at least suggests that incentive pay could vary by month depending on what actual sales materialized under a given new account.

That, however, is not perfectly clear from the Plan, nor is it what Defendant argues. Defendant argues simply that Plaintiff knew or should have known that under the Plan, he would receive no post-termination commissions. That more limited argument seems to fall under *Jordan* rather than *LaScola*; if the timing of his firing was the only bar to Plaintiff's receiving incentive pay under the Plan, *Jordan* supports his claim. Furthermore, given the factual similarity of this case to *Jordan* and *LaScola*, the Court declines to import any narrower construction of opportunism from cases like *CP Clare*, despite Defendant's invitation to do so.

Defendant's argument that refusing to pay commissions complied with the terms of the Plan, and therefore was not, (as in *Jordan*) an unforeseen circumstance, also fails, at least at this stage. The Seventh Circuit has described *Jordan* that way, but has not consistently limited its applicability to such cases. Furthermore, the Plan appears to govern the terms of compensation, not employment. The fact that the Plan requires that an employee to be employed on a certain date to be eligible for payment does not change that the Seventh Circuit has concluded that it can be a breach of an employment contract — even an at-will one — to

discharge an employee in bad faith solely to deprive him of commissions "in large part 'earned' prior to separating from the employer" *LaScola*, 946 F.2d at 566 (quotation and citation omitted). Though it may not survive a more developed record, Plaintiff's Count I stands.

### B. Count II – IWPCA

Defendant moves to dismiss Plaintiff's IWPCA claim, arguing that it fails for the same reason that Plaintiff's original IWPCA claim did — that Plaintiff cannot recover under the IWPCA for post-termination "commissions." Plaintiff appears to be correct, however, that Defendant's position is based on a misreading of the Amended Complaint. In his IWPCA claim, Plaintiff now seeks only amounts owed to him on the day he was fired. Compl. ¶ 40; 41; 42(A).

In its reply, Defendant tries to resuscitate its motion, arguing for the first time that Plaintiff cannot get relief under the IWPCA because no matter what commissions Plaintiff allegedly "earned" or when, he had to be actively employed on the closing date of the incentive period to be eligible for payment. Reply 5. Defendant stresses that while Plaintiff alleges that he was owed certain accrued commissions when he was fired (Compl. ¶ 27.), he does not allege that he was actively employed on the relevant closing date. Of course, this argument having been raised for the first time in reply, it is waived.

Furthermore, the Court concludes that the allegation that Plaintiff was owed commission payments when he was fired, in the context of the whole complaint, sufficiently alleges that he was owed that money under the Plan's terms. That is to say, he adequately alleges that he was owed the money because he was employed on the closing date of the relevant incentive period, based on "JDE cut-off" (whatever that may mean here). (To the extent that Defendant argues that Plaintiff was not entitled to incentive payments because the Plan specifies that payments are processed on the last payroll date of the month following the availability of the business results, *see* Reply at 5, n. 2, that argument also is waived.) Accordingly, Defendant's motion to dismiss is denied.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 9/5/2012